PEOPLE *v.* BROWN.

FORGERY — BILLS AND NOTES — UTTERING FORGED INSTRUMENTS — PASSING CHECK WITHOUT FUNDS—NAMES.

Evidence that the respondent, who was charged with uttering a forged check (3 Comp. Laws, §§ 11659, 11660, 5 How. Stat. [2d Ed.] §§ 14695, 14696), indorsed and delivered to the witness for the prosecution a check for $10 signed by respondent who was also the payee, that there were no funds in the drawee bank in the name of respondent, that the witness had known him since boyhood and his name was not that which he signed on the instrument, but respondent went by the name so used and the witness supposed respondent was signing his own name to the check, *held*, not to support the charge, and that it did not tend to prove the instrument was false or forged.

Error to the recorder's court of the city of Detroit; Phelan, J. Submitted November 7, 1913. (Docket No. 159.) Decided December 20, 1913.

Leo Brown was convicted of uttering a forged instrument. Reversed; respondent discharged.

*Grant Fellows*, Attorney General, for the people.

*Louis T. Herman*, for respondent.

OSTRANDER, J.   Respondent who is charged in the information as "L. Brown, whose first name is unknown, but whose person is well known," was convicted by a jury of the offense of having uttered and published as true a certain false, forged, and counterfeit order for the payment of money, with intent to injure and defraud.   The order, set out in the information, is as follows:

"$10.00.                     DETROIT, MICH., Feb. 2, 1913.
   "German-American Bank:   Pay to the order of L. Brown, ten and 00/100 dollars, value received, and charge the same to
   "No. 2.                                     L. BROWN."

It is indorsed, "L. Brown."   The testimony for the people tended to prove that on the 2d day of February, 1913, which was Sunday, the respondent called at the store of one Hilson, told him he had some money in the bank that he could not get until Monday, and asked him to give him $10 for his check, which Hilson did; Hilson indorsed the check, presented it at the bank on the following morning, and was told that respondent had no account there; that respondent had not since repaid him the money or taken the check.   It also appeared that Hilson had known the respondent from childhood—25 or 28 years—that respondent drew the check in his (Hilson's) place of business.   Hilson testified:

"*Q.* This check, therefore, you understood to be his check?
   "*A.* Yes, sir.
   "*Q.* On the back, that you understood to be his signature?
   "*A.* Yes; he wrote it out right in my store.
   "*Q.* So all that you complain of is that he had no account at the bank, and you could not get the money?
   "*A.* Yes, sir.

"*Q.* But the check is in his handwriting?

"*A.* Yes; he wrote it.

"*Q.* Made by him as maker and indorsed by him?

"*A.* Yes, sir.

"*Q.* You do not claim that it is anybody else's check but his?

"*A.* His check."

The testimony tended further to prove that the respondent had no account and no money in the bank upon which the check was drawn, and that he had stated to the detective of the police department who arrested him that he got hard up for money, made out the check, and cashed it with a friend of his, and calculated to make it good; that he had no money in the bank. Upon this testimony the people rested. Thereupon the attorney for the respondent moved the court to discharge the respondent and to quash the information, because it appeared that the instrument was not forged. After a considerable colloquy the people recalled the witness Hilson, who stated that he had known the respondent since boyhood; that his name is Leon Novakowski; that he had heard of his using the name of L. Brown; that they were from the same town, which respondent left many years ago; that he knew him there as Leon Novakowski, but had afterwards heard that he went by the name of L. Brown; that it was about ten years since he had first heard him called Leo Brown; that he understood the respondent was signing his own name to the check; that he did not understand that he was signing the name of any other person to the check or any assumed name, but knew that he was going by the name of L. Brown. No testimony was offered on the part of respondent; his counsel simply stated to the jury that, if he was guilty of any offense, it was misrepresenting that he had an account at the bank.

3 Comp. Laws, § 11659 (5 How. Stat. [2d Ed.] § 14695), referred to in the information, prescribes

the punishment for persons who shall falsely make, alter, forge, or counterfeit any order for money or other property, with intent to defraud or injure any person, and section 11660 provides that every person who shall utter and publish as true any false, forged, altered, or counterfeit instrument mentioned in the preceding section, knowing the same to be false, altered, forged or counterfeit, with intent to injure or defraud, shall be punished by imprisonment in the State prison not more than 14 years or in the county jail not more than 1 year.

The recorder submitted the question of respondent's guilt to the jury, and, upon the verdict being returned, sentenced him to be confined in the State's prison at Marquette for a term of not less than 5 years. A motion to set aside the verdict and judgment and grant a new trial was refused. The cause is here on exceptions, of which we need to consider but one, which is that the court erred in refusing to discharge the respondent at the close of the people's case. It is obvious that the motion should have been granted; there being no testimony tending to prove that the check was a false, altered, forged, or counterfeit instrument. Upon the hearing the attorney general confessed error.

The verdict must be set aside, and the respondent discharged.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, STONE, and BIRD, JJ., concurred.